```
                                        Pages 1 - 16

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

       BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

SYED NAZIM ALI,                    )
                                   )
           Plaintiff,              )
                                   )
  VS.                              ) NO. C 18-03945 RS
                                   )
APPLE, INC.,                       )
                                   )  San Francisco, California
           Defendant.              )
_____)

                                   Thursday, November 8, 2018
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        **SYED NAZIM ALI,**
        Appearing Pro Se

For Defendant:
        BAKER & MCKENZIE LLP
        660 Hansen Way
        Palo Alto, California  94304
    **BY:** **TODD K. BOYER, ESQ.**

Reported By: **BELLE BALL, CSR 8785, CRR, RDR**
        Official Reporter, U.S. District Court

| | |
|---|---|
| 1 | **Thursday - November 8, 2018**                                    **1:51 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **THE CLERK:**  C 18-3945, Ali versus Apple. |
| 4 | Please come forward and state your appearances. |
| 5 | **MR. ALI:**  Good afternoon, Your Honor.  I'm plaintiff, |
| 6 | Syed Nazim Ali. |
| 7 | **THE COURT:**  Good afternoon. |
| 8 | **MR. BOYER:**  Good afternoon, Your Honor.  Todd Boyer |
| 9 | on behalf of defendant Apple. |
| 10 | **THE COURT:**  Good afternoon. |
| 11 | This is the motion to dismiss the first amended complaint |
| 12 | in this discrimination retaliation case.  And I issued a prior |
| 13 | order, so we are now at the first amended stage, and have the |
| 14 | new motion to dismiss. |
| 15 | I have read through your arguments, Mr. Boyer.  You're |
| 16 | arguing, on one part, as I understand it, on exhaustion of |
| 17 | remedies.  And then, the 12(b)(6) failure-to-state-a-claim |
| 18 | arguments. |
| 19 | So, rather than my giving a tentative, why don't I let you |
| 20 | go ahead and just summarize for me your position, and then I'll |
| 21 | see what Mr. Ali has to say. |
| 22 | **MR. BOYER:**  Yes, Your Honor.  So our position is |
| 23 | essentially that all of the claims are -- well, I think |
| 24 | there's two positions. |
| 25 | One is -- the first part is almost -- well, all of the |

1   statutory claims are barred, as a matter of time.  Right.  So
2   with the exception of the race claim, which I get to later,
3   each one of the Title -- each one of the federal claims are
4   barred because they were not filed within 90 days.
5           **THE COURT:**  Uh-huh.
6           **MR. BOYER:**  With regard to the age-discrimination
7    claim, that claim is barred because --
8           **THE COURT:**  That's the FEHA --
9           **MR. BOYER:**  FEHA, and the ADEA, the Age
10  Discrimination in Employment Act.  Both those are claims are
11  barred because they were not alleged in the administrative
12  charges.
13      And then with regard to the --
14          **THE COURT:**  And that's -- the age issue, your
15  contention is not that it was untimely; it was just never
16  asserted.
17          **MR. BOYER:**  That's correct. Well, part of it is
18  untimely.  Even if it was asserted, the ADEA claim was
19  untimely.  And if it was -- well, it wasn't asserted.  So it's
20  a two-part claim, right, so the -- it's untimely and also --
21          **THE COURT:**  I understand.
22          **MR. BOYER:**  -- not served.  Okay.
23          **THE COURT:**  And from your perspective, there's no
24  basis for equitable tolling, because Mr. Ali has not presented
25  an argument that would warrant that.  And your other argument

1  seems to be that:  Well, he was engaging in litigation
2  activity during that period of time, so plainly, there was no
3  reason why he couldn't have proceeded in a timely fashion.
4          **MR. BOYER:**  That's exactly right, Your Honor.  Yes.
5          **THE COURT:**  Okay.  So that leaves a few claims that
6  theoretically could be subject to, even under your argument,
7  if I've got this correctly, the FEHA age claim that is related
8  to the November 17th -- or November, 2017, application.  And
9  then there's a FEHA claim for religious discrimination, and a
10 FEHA claim for racial discrimination.
11     Run by me why those would be time-barred for failure to
12 exhaust.
13         **MR. BOYER:**  Okay.  So the -- the November 17th claim,
14 to the extent that that's being asserted here, would not have
15 been exhausted, because the administrative charges were
16 actually filed before then.  So he would need to file a new
17 administrative charge if he was going to allege that those
18 were part of the lawsuit here.
19         **THE COURT:**  And then, if he then did that, your
20 argument would be:  It's untimely, it should have been --
21 well, I know you think the entire case should go.  But what
22 I'm trying to get a handle on is the claims that, even under
23 your theory, could theoretically, at least, be subject to a
24 further leave to amend.
25     And that's why I went through those three claims that I

1  thought theoretically there would be a way to amend.  I'm not
2  saying Mr. Ali can do that, but -- and tell me why that's not
3  so.
4          **MR. BOYER:**  Okay.  So there was the age claim.
5          **THE COURT:**  The age claim under FEHA, the
6  religious-discrimination claim under FEHA, and the
7  racial-discrimination claim under FEHA.
8          **MR. BOYER:**  All right.  So assuming that the
9  age-discrimination claim was actually exhausted, I think we go
10 to the other -- it probably is timely with respect to the FEHA
11 claim filed with respect to the original applications that he
12 had submitted in April of 2017.  But, as I stated earlier, he
13 failed to exhaust those administrative remedies, altogether.
14     With regard to the religious claim, that claim was not
15 asserted in the lawsuit.  And therefore, it's not timely, at
16 all.  To the extent that he's actually asserting a religious
17 discrimination claim, which he's never actually done -- and we
18 did put him on notice that we're not sure if this is a
19 religious-discrimination claim or not; it's not brought out as
20 separate cause of action.
21         **THE COURT:**  If it appears from the complaint, taken
22 as a whole, that there is an aspect of it which is focused on
23 religious discrimination, even if it's not spelled out in a
24 religious discrimination claim, per se, can I -- and with
25 liberality going to a pro-se pleading, can I find that it's

1   there?
2   **MR. BOYER:** I don't think, based on the allegations
3   in this complaint.
4   **THE COURT:** Okay.
5   **MR. BOYER:** I think, there, he -- he uses all of
6   these protected categories interchangeably.  There's no facts
7   to specifically support his religious discrimination claim.
8       And again, I go back to the fact that we put him on notice
9   that this was out there.  He decided not to amend his complaint
10  with a separate cause of action for religious discrimination.
11      And we also pointed out that in his other complaints
12  against the other employers that he filed almost
13  simultaneously -- at the same time that he filed this complaint
14  against Apple, they do contain separate causes of action for
15  religious discrimination.
16  **THE COURT:** Yeah.
17  **MR. BOYER:** So it appears to me that this has been
18   intentionally omitted.
19  **THE COURT:** Okay.  How about the FEHA
20  racial-discrimination claim?
21  **MR. BOYER:** The racial-discrimination claim is the
22  only claim that would be timely and technically exhausted.
23  And so what we then get to is the 12(b)(6).
24  **THE COURT:** 12(b)(6).
25  **MR. BOYER:** Yes.

1          **THE COURT:**  And then there's the retaliation claim.
2   Your argument is that applying for a job is not protected
3   activity.
4          And then you've got an argument -- well, the fifth claim
5   for relief, which more or less rises or falls on the
6   discrimination claim, the failure to prevent discrimination.
7          And then intentional infliction of emotional distress,
8   that one is a 12(b)(6) one.
9          **MR. BOYER:**  That's correct.
10         **THE COURT:**  All right.  Mr. Ali.
11         **MR. ALI:**  Yes, thank you, Your Honor, for giving us
12   the opportunity.
13         Your Honor, my claim was basically filed within the
14   timeline under FEHA.  And my right-to-sue letter was expiring
15   on June 29th, and I filed the complaint in Superior Court on
16   May 31st.  Twenty-six days before the expiration date.
17         The delay was because I couldn't filed the 90 days in
18   Federal Court, because I was on 18 months of therapy from three
19   different doctors.
20         **THE COURT:**  But isn't it correct that you were
21   engaging in litigation activity in other matters?
22         **MR. ALI:**  I was responding to, while I am battling
23   with a severe health problem, that including my mental health,
24   my physical health, and my -- also my emotional concern, which
25   I was going to four different doctors, while I'm responding to

1   comply with whatever the opposing party are forcing me to do
2   this, do this.
3       There was a lot of dispute, discovery dispute, lasted for
4   several month.  And I have to basically respond, accordingly.
5   And I was not in focus of whether I should file or not until I
6   decided to do that.
7           **THE COURT:**  Well, you understand the difficulty is
8   that, accepting what you've said, to equitably toll, you have
9   to be able to show that you were -- you were just unable to do
10  so.  And it is -- the fact that you are able to engage in
11  litigation on other matters does -- even if it was a difficult
12  time, and I understand that, equitable tolling doesn't operate
13  simply because you're under a lot of stress and it's a
14  difficult time.
15      So the fact that you are engaging in other activities
16  makes it difficult to assert equitable tolling.
17          **MR. ALI:**  Okay.
18          **THE COURT:**  Well, let me ask you.  On the claims, the
19  particular claims that I was asking Mr. Boyer about, just so
20  it's clear, are there -- have you presented all the facts that
21  you have at your -- that you're privy to, in the first amended
22  complaint?
23      In other words, are there more facts that you would be in
24  a position to present, or not?
25          **MR. ALI:**  Best of my knowledge and information I

1  have, I tried to incorporate as much as data in the sec- --
2  first amended complaint.
3           **THE COURT:**  Okay.  And -- okay.  On a factual issue I
4  wasn't clear on, you know, there's some back-and-forth in the
5  papers about the application for the job at LanceSoft.  And I
6  just want know, are there any facts that you -- did you apply
7  for any Apple jobs other than the LanceSoft job?
8           **MR. ALI:**  Yes.  There are 14 jobs I applied at
9  apple.com.
10          **THE COURT:**  I want you to focus on November of 2017.
11          **MR. ALI:**  That around, I applied, one or more, two
12 jobs through agencies to submit me, but no one has contacted
13 me.
14          **THE COURT:**  Okay.  So, but, I'm still a little
15 unclear.  In that period of time, November of 2017, you've
16 talked about the application to LanceSoft, which, your
17 argument is, is associated with Apple.
18     To Apple directly, did you make any applications in
19 November of 2017?
20          **MR. ALI:**  Two agencies -- agencies submitted me for
21 system administrator positions to Apple, by contacting me
22 that:  Apple had this position, we're submitting you.
23     I said:  Fine.
24          **THE COURT:**  And what agencies are you talking?
25          **MR. ALI:**  2016 --

1           **THE COURT:**  I'm talking about 2017 now.
2           **MR. ALI:**  2017, okay, 2017 was on April 3, I apply
3   for 14 jobs.  Yeah.
4           **THE COURT:**  Where were those jobs located?
5           **MR. ALI:**  In California, in Santa -- Cupertino
6   campus.
7           **THE COURT:**  And were those -- your application was to
8   agencies --
9           **MR. ALI:**  Apple.
10          **THE COURT:**  -- or to Apple directly?
11          **MR. ALI:**  Directly, Apple.
12          **THE COURT:**  But that's in April.
13          **MR. ALI:**  Yes, sir.
14          **THE COURT:**  Okay.  How about November?
15          **MR. ALI:**  2017?
16          **THE COURT:**  Yes.
17          **MR. ALI:**  2017, I applied for -- it was in November,
18  2016, I guess.  October, 2016.  That's what you're referring,
19  I guess.
20          **THE COURT:**  Okay.
21          **MR. ALI:**  Yeah.  (Inaudible) 2017, I did not apply.
22      (Reporter interruption)
23          **MR. ALI:**  So on November, 2017, I did not apply.  I
24  apply in April.  April 3, 2017.  And then October 31, 2016.
25  And that -- gone through interview process until

1    December 11th, 2016.
2         **THE COURT:** So we've talked about the
3    exhaustion-of-remedies point, and equitable tolling.
4         Let's just touch on -- 12(b)(6) is -- the shorthand is
5    "failure to state a claim," which is effectively the argument
6    that the complaint doesn't present enough of a basis to proceed
7    further.  Which is the argument.
8         So why don't you just review for me what your position is
9    on why your claims that you brought in the first amended
10   complaint are adequate.
11        Put aside -- let's put aside the exhaustion issue.
12        **MR. ALI:** Sure.
13        **THE COURT:** And just talk about the adequacy of your
14   claims.
15        **MR. ALI:** So Your Honor, my claim, the first amended
16   complaint demonstrating that there are 14 jobs which I'm
17   highly qualified in cyber skills, cyber security, cyber law,
18   cyber privacy law.  And I went to through the training, and I
19   have the highest qualification, with 20 years of experience.
20        And these jobs which Apple advertise, they're clearly
21   asking you have a CISSP, CISA, CISM, series.  I have every
22   qualification.  Along with I'm also basically going to first
23   year of law school, because I specialize in cyber law and cyber
24   practice.
25        So I had hoped that I will get these jobs because I am

1   local.  I'm a single father, raising a child.  I wanted to make
2   sure I secure my job where I can retain, and stay with the
3   company and grow, and raise my child.
4   　　　　And these company, they never give me job.  These company
5   give jobs to offshore worker, they bring them in on a H-1 visa,
6   and give them a job.  My job, as an American citizen, is taken
7   away.
8   　　　　And I have been through a depression.  Stress.  Eighteen
9   month of therapy, I'm in a -- regular more, now that I'm able
10  to come and stand, talk.
11  　　　　**THE COURT:**  As I think you are aware from the papers,
12  you know, employment claims are not just:  I have been -- I've
13  been mistreated by Company X, they made a bad decision, or
14  they didn't treat me as they should, in a general sense.  It
15  has to fall within one of these categories.
16  　　　　And the categories you suggest are age, religion, national
17  origin, and -- how do you -- what's the basis for your
18  conclusion that -- the reason they didn't give you the job?  It
19  could be for a stupid, foolish, nasty reason.  But if it's not
20  within one of the categories, it isn't an employment claim, in
21  this court.  So why do you assume that it's either because of
22  your age, your religious affiliation, national origin?
23  　　　　In a general sense, I understand from your papers that
24  there are these entities -- or Silicon Valley companies have a
25  large Indian population, and they're not inclined towards

1   Pakistani population, and therefore, you're discriminated.
2       But is that more of a general sense?  Or a specific -- do
3   have specific facts on these issues?
4       **MR. ALI:**  So Your Honor, my resume, first page of the
5   resume, it shows my last name, Ali.  Even I go by "Alex Ali"
6   after 9/11, the last name clearly show I'm a Muslim.
7       Second, my first page of the resume say that my education
8   is Karachi, Pakistan.  That show that I am from Pakistan.
9       And also, I'm showing with my 20 years of experience in
10  cyber security and cyber practice, that show that I'm basically
11  of the age where basically, 20 years of experience, I must be
12  40, 45.
13      And then when people talking to me, they definitely know
14  that I am from Pakistan, I am Muslim, and I am not from the
15  protected class.  Which, Apple has a lot of people from that
16  protected class, which is South Indian and Indian.
17      If I have to basically do a discovery and I ask Apple to
18  produce me a racial profile study -- report and pie graph, you
19  will see 70 to 80 people in the IT department working from one
20  region, which is India, South India, and they don't basically
21  give jobs to local people who are qualified, who are U.S.
22  citizen.  Me, as a U.S. citizen, where I will go at this age,
23  with this salary.
24      **THE COURT:**  Mr. Boyer.
25      **MR. BOYER:**  Your Honor, so a couple of points to

1    address.  I think it's clear that he's speculating as to the
2    reasons as to why Apple did not hire him for these jobs he
3    applied to in April.
4        He admitted in the complaint and also in subsequent
5    pleadings, including a declaration that he filed along with his
6    opposition to the first complaint, the original complaint, that
7    he never talked to anyone at Apple.  So nobody would have ever
8    known he's from Pakistan, that he was Muslim, or that he was
9    over 40.
10       His resume does show that he has experience.  But you
11   could start working in the IT industry at 18 and 19.  And that
12   would put you right at the 38-, 39-year-old mark.  So there's
13   nothing that's outwardly apparent from any of the
14   correspondence or the pleadings that would show that anyone at
15   Apple knew about any of these protected categories, especially
16   since he never met with anybody, and never spoke with anyone
17   directly there.
18           **THE COURT:**  Of course, the basis of his claim is he
19   was frozen out at the front end.  So the absence of meeting
20   with anyone, according to Mr. Ali, is a function of these
21   discriminatory activities.  But I hear your point, which is:
22   That's rather speculative.
23           **MR. BOYER:**  It is.  And, you know, to the extent his
24   name is "Ali," it could -- he could be from anywhere.  We
25   pointed that out in our reply brief.  "Ali" is a very common

1    name.  Doesn't necessarily mean you're from Pakistan.
2         **THE COURT:**  Okay.  Well, anything further either side
3    wants to say?
4         I will take the matter under submission, and review it
5    further, and give you a written order on the subject.
6         **MR. ALI:**  Your Honor, I am here --
7         **THE COURT:**  Go ahead.
8         **MR. ALI:**  Your Honor, I am here in this Court to seek
9    a justice for best interest of a U.S. American citizen.  I'm
10   in the country, a law-abiding citizen, a single father, fully
11   qualified.  Apple has a moral, legal, and community duty to
12   make sure they employ local people here.
13      And I can tell you, on the basis of discovery, being as a
14   professional auditor, I'll prove in front of a jury that -- how
15   Apple was unfairly bringing offshore people and taking away
16   U.S. job.  U.S. citizen job.  My job is taken, my job is
17   stealen (sic), my job is hacked.  And I'm entitled to seek
18   justice from the highest courts, to make sure that I receive my
19   justice.
20        **THE COURT:**  Of course, there is no legal claim -- if
21   the claim is simply premised on the decision by an employer to
22   take advantage of the H-1B system and hire someone, if it's
23   not otherwise discriminatory in terms of age, race, et cetera,
24   there's no illegality to that.
25      From a policy perspective, you can argue that it's not the

1  way that it should be.  But if you have a right to work in the
2  United States, a legitimate right to work, the simple act of
3  hiring that person wouldn't be, in and of itself, a legal
4  claim.
5      You're with me on that?
6          **MR. ALI:**  Yes, sir, Your Honor.
7          **THE COURT:**  Okay.  So it has to be something more.
8   It has to be reflective of one of these categories.
9      Okay.  All right.  Very good.  I'll take the matter under
10 submission, and give you an order.
11         **MR. BOYER:**  Thank you, Your Honor.
12         **THE COURT:**  Thank you.
13         **MR. ALI:**  Thank you, Your Honor.  Thank you.
14     (Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_/s/ Belle Ball_

Belle Ball, CSR 8785, CRR, RDR

Friday, January 4, 2019